# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOYD MILLIKEN, derivatively on behalf of SYMANTEC CORP., <br><br> Plaintiff, <br><br> v. <br><br> GREGORY S. CLARK, NICHOLAS R. NOVIELLO, MARK S. GARFIELD, FRANK E. DANGEARD, KENNETH Y. HAO, DAVID HUMPHREY, GERALDINE B. LAYBOURNE, DAVID L. MAHONEY, ROBERT S. MILLER, ANITA M. SANDS, DANIEL H. SCHULMAN, V. PAUL UNRUH, and SUZANNE M. VAUTRINOT, <br><br> Defendants, <br> and <br><br> SYMANTEC CORPORATION, <br><br> Nominal Defendant. | Civ. No. 1:18-cv-01848-RGA |

## GREGORY S. CLARK AND NICHOLAS R. NOVIELLO'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS THE VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

OF COUNSEL:

Susan D. Resley, *Admitted Pro Hac Vice*
susan.resley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:    (415) 442-1000
Facsimile:    (415) 442-1001

Michael Kichline, *Admitted Pro Hac Vice*
michael.kichline@morganlewis.com
1701 Market St.
Philadelphia, PA 19103-2921
Telephone:    (215) 963-5000
Facsimile:    (215) 963-5001

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market St., Suite 2201
Wilmington, DE 19801
Telephone:    (302) 574-7290
Facsimile:    (302) 574-3001
jody.barillare@morganlewis.com

*Attorneys for Defendants*
*Gregory S. Clark and Nicholas R. Noviello*

**TABLE OF CONTENTS**

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.    SUMMARY OF ARGUMENTS .................................................................................. 1

III.   STATEMENT OF FACTS ........................................................................................ 2

IV.   ARGUMENT ......................................................................................................... 4

     A.     The Complaint Should be Dismissed Pursuant to *Forum Non Conveniens*. ......... 4

     B.     The Complaint Should be Dismissed Pursuant to Rule 23.1. ............................... 4

     C.     The Complaint Should be Dismissed Under Rule 12(b)(6). ................................. 5

          1.     Legal Standards .................................................................................... 5

          2.     The Section 14(a) claim should be dismissed ........................................... 6

          3.     The Section 10(b) claim should be dismissed ........................................... 6

          4.     The Section 20(a) claim should be dismissed ......................................... 14

          5.     The Court should decline to exercise supplemental jurisdiction. ............ 14

          6.     The breach of fiduciary duty claim should be dismissed........................ 14

          7.     The Brophy claim should be dismissed. ................................................. 18

          8.     The unjust enrichment claim should be dismissed. ................................. 20

          9.     The waste claim should be dismissed. .................................................... 20

V.     CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bottling Co. v. Repole*,
   2020 WL 7787043 (Del. Super. Ct. Dec. 30, 2020) ................................................................15

*Arazie v. Mullane*,
   2 F.3d 1456 (7th Cir. 1993) ................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................5, 10

*In re Baker Hughes Inc. Merger Litig.*,
   2020 WL 6281427 (Del. Ch. Oct. 27, 2020) ................................................................14, 16

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013)................................................................6, 8

*In re Boeing Co. Deriv. Litig.*,
   2021 WL 4059934 (Del. Ch. Sept. 7, 2021) ................................................................5

*Brophy v. Cities Service Co.*,
   70 A.2d 5 (Del. 1949) ................................................................18, 19

*Buckley Family Trust v. McCleary*,
   2020 WL 1522549 (Del. Ch. Mar. 31, 2020)................................................................17

*In re Camping World Holdings, Inc. S'holder Deriv. Litig.*,
   2022 WL 288152 (Del. Ch. Jan. 31, 2022) ................................................................18

*City of Edinburgh Council* v. *Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)................................................................14

*City of Warren Gen. Employees' Ret. Sys. v. Roche*,
   2020 WL 7023896 (Del. Ch. Nov. 30, 2020) ................................................................15

*City Pension Fund for Firefighters & Police Officers in Miami v. The Trade Desk, Inc.*,
   2022 WL 3009959 (Del. Ch. July 29, 2022)................................................................16

*Claude Worthington Benedum Found. v. Bank of New York Mellon Corp.*,
   422 F. Supp. 3d 940 (W.D. Pa. 2019), *aff'd*, 849 F. App'x 36 (3d Cir. 2021)................15, 16

*Duncan v. Vantage Corp.*,
   2019 WL 1349497 (D. Del. Mar. 26, 2019) ................................................................14

*Elfers v. Gonzalez*,
  2020 WL 7264272 (D. Del. Dec. 10, 2020)........................................................7

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994).............................................................................6

*Gordon v. Sonar Cap. Mgmt. LLC*,
  962 F. Supp. 2d 525 (S.D.N.Y. 2013)..............................................................19

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004).............................................................................3

*Hedges v. Musco*,
  204 F.3d 109 (3d Cir. 2000)...........................................................................14

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018)....................10

*Higginbotham v. Baxter Int'l Inc.*,
  495 F.3d 753 (7th Cir. 2007) .........................................................................16

*Institutional Inv. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)...........................................................................13

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
  2020 WL 4584354 (D. Del. Aug. 10, 2020 .........................................................8

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ...................................................................4

*Johansson v. Ferrari*,
  2015 WL 5000848 (D. Del. Aug. 20, 2015) .......................................................10

*In re Johnson & Johnson Derivative Litig.*,
  865 F. Supp. 2d 545 (D.N.J. 2011) ..................................................................18

*Kahnert v. Kotick*,
  2022 WL 2167792 (C.D. Cal. May 20, 2022) ...............................................17, 19

*Kaufman v. Allemang*,
  70 F. Supp. 3d 682 (D. Del. 2014)...................................................................20

*Kiger v. Mollenkopf*,
  2021 WL 5299581 (D. Del. Nov. 15, 2021) .........................................................5

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
  2017 WL 3891676 (D. Del. Sept. 6, 2017)..........................................................8

*McCabe v. Ernst & Young, LLP.*,
494 F.3d 418 (3d Cir. 2007)................................................................7

*MetLife, Inc. v. Kandarian*,
2020 WL 4287374, at *10 (D. Del. July 27, 2020), *report and
recommendation adopted*, 2020 WL 12432745 (D. Del. Sept. 8, 2020) ................................13

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)................................................................3

*In re NutriSystem, Inc. Sec. Litig.*,
653 F. Supp. 2d 563 (E.D. Pa. 2009) ................................................11

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016)................................................................11

*Payne v. DeLuca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006)................................................18

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Zale Corp.*,
499 F. App'x 345 (5th Cir. 2012) ................................................11

*Ray v. Karris*,
780 F.2d 636 (7th Cir. 1985) ................................................7

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2019 WL 2491935 (N.D. Cal. June 14, 2019) ................................1, 9, 19

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2019 WL 4859099 (N.D. Cal. Oct. 2, 2019)................................9

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000)................................................................7

*Stanley Black & Decker, Inc. v. Gulian*,
70 F. Supp. 3d 719 (D. Del. 2014)................................................13

*Starr Invs. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*,
2014 WL 4180331 (D. Del. Aug. 21, 2014) ................................11, 13

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006)................................................................13, 18

*Taylor v. Kissner*,
893 F. Supp. 2d 659 (D. Del. 2012)................................................20

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) ................................................13

*Tilden v. Cunningham*,
   2018 WL 5307706 (Del. Ch. Oct. 26, 2018) ..........................................................19

*United Food & Commercial Workers Union & Participating Food Indus. Emps.*
   *Tri-State Pension Fund v. Zuckerberg*,
   262 A.3d 1034 (Del. 2021) ...........................................................................................5

*United States v. Medco Health Sols., Inc.*,
   2017 WL 63006 (D. Del. Jan. 5, 2017)......................................................................14

*In re Verisign Inc. Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .....................................................................14

*Winer Fam. Tr. v. Queen*,
   2005 WL 102936 (E.D. Pa. Jan. 13, 2005), *aff'd*, 503 F.3d 319 (3d Cir. 2007) ....................12

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) .....................................................................................17

**Statutes**

28 U.S.C.A. § 1367(c)(3)...........................................................................................2, 14

Private Securities Litigation Reform Act of 1995 (PSLRA) .......................................6, 8

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Gregory S. Clark, former Chief Executive Officer and former Board member of Symantec Corporation n/k/a NortonLifeLock, Inc. ("Symantec" or the "Company"), and Nicholas R. Noviello, its former Chief Financial Officer, respectfully move to dismiss Plaintiff's Verified Amended Shareholder Derivative Complaint filed July 11, 2022 ("Complaint", D.I. 47).

## II.    SUMMARY OF ARGUMENTS

Plaintiff's 570-paragraph Complaint attempts to spin the benign results of an investigation by the Company's Audit Committee into an accounting scheme to support claims against Messrs. Clark and Noviello (and others) for violations of the federal securities law, breaches of fiduciary duty, unjust enrichment and corporate waste.  The Complaint is a hodgepodge of sweeping and unsubstantiated allegations, largely recycled from the settled securities class action (*SEB Inv. Mgmt. AB v. Symantec Corp., et al.,* 3:18-cv-02902-WHA (the "Securities Action")), that attempt to portray nefarious conduct, but it fails to live up to its own hyperbole.  Other than a single instance of immaterial revenue that was initially recognized in one quarter and subsequently deferred to another during an open period, Plaintiff identifies no actual accounting issue.  Instead, Plaintiff relies on conclusory allegations about supposed wrongdoing and baseless supposition about the mere possibility of improper accounting.  Given the lack of well-pled facts and immaterial nature of the Audit Committee results on which it is based, the Complaint fails to state claims and should be dismissed for multiple reasons:

1. As is set forth in the Company's motion to dismiss, in which Messrs. Clark and Noviello hereby join, the Amended Complaint should be dismissed pursuant to *forum non conveniens* because the Company's bylaws require this case to be heard in the Delaware Court of Chancery.

2. Messrs. Clark and Noviello further join in the Company's arguments that the Amended Complaint should be dismissed for failure to meet the demands of Federal Rule of Civil Procedure

23.1 ("Rule 23.1"). Additionally, Messrs. Clark and Noviello should be dismissed because Plaintiff fails to plead particularized facts sufficient to demonstrate that the Symantec Board could not have properly evaluated a demand to sue Messrs. Clark and Noviello in their officer capacities.

3. The federal securities claims alleging violations of Sections 14(a), 10(b) and 20(a) of the Securities Exchange Act of 1934 must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Plaintiff fails to plead falsity, materiality or causation as to the 14(a) claim. Plaintiff fails to plead that any challenged statement affected Symantec's stock repurchases and fails adequately to plead reliance, material falsity, and scienter as to the 10(b) claim. The 20(a) claim fails because Plaintiff has not pled an underlying violation of 14(a) or 10(b) or pled control.

4. The Court should decline supplemental jurisdiction over the state law claims under 28 U.S.C.A. § 1367(c)(3) because the federal claims fail.

5. The claims for breach of fiduciary duty, unjust enrichment and corporate waste fail because the Complaint does not plead facts that Messrs. Clark or Noviello engaged in misconduct.

## III.    STATEMENT OF FACTS[1]

***Messrs. Clark and Noviello Join Symantec to Lead Its Transformation.*** Founded in 1982, Symantec is a leader in providing cybersecurity solutions for businesses and consumers. ¶ 113. In 2016, Symantec divested Veritas Software, Inc., a company it had previously acquired for $13.6 billion. ¶ 4. In 2016 and 2017, Symantec also completed two significant acquisitions: Blue Coat Systems ("Bluecoat") in 2016 and LifeLock, Inc. ("LifeLock") in 2017. ¶ 4. Mr. Clark served as Blue Coat's CEO, and Mr. Noviello served as its CFO. ¶¶ 37, 42. Symantec replaced its CEO with Mr. Clark as part of its August 2016 acquisition of Blue Coat and appointed Mr. Noviello as

---

[1] Citations to "¶ __" refer to paragraphs of the Complaint. All internal citations, footnotes, and quotation marks are omitted, and all emphasis is added unless otherwise stated. Citations to "Ex." refers to the exhibits to the Declaration of Jody C. Barillare filed herewith.

its CFO in December 2016.  ¶¶ 33, 38.  Mr. Clark had over 25 years of experience with software security, including as President and CEO of several companies.  ¶ 37.  Mr. Noviello, who served as Symantec's Chief Integration Officer before his appointment as CFO, holds a CPA and had extensive public company finance experience. ¶ 42.

   ***Symantec's Use of GAAP and Non-GAAP Metrics is Transparent.***  Symantec provided financial guidance based on both GAAP and non-GAAP metrics to be transparent because management "regularly uses…supplemental non-GAAP…to understand, manage and evaluate [the] business and [to] make operating decisions." Ex. A at p. 3.[2]  For example, its May 10, 2017 8-K (cited ¶ 255) disclosed that the Company had undergone significant change due to acquisitions (among other things), that non-GAAP measures were being provided to help readers understand past performance and future results, and that these numbers were only supplemental; investors were expressly encouraged to review the reconciliation of GAAP and non-GAAP measures that Symantec provided.  Ex. B at 8.  Symantec included the numbers for non-GAAP adjustments, as well the amount by which non-GAAP revenue increased due to the deferred revenue fair value adjustment (i.e., adding deferred revenue into non-GAAP revenue).  *Id.* at 14-15, 24. Other 8-Ks from the "Relevant Period" (May 2017 to August 2018) (¶ 1) contained similar disclosures.  *See* Exs. C at 18, D at 18, and E at 20 (cited ¶¶ 267, 314, 327).

   ***The Audit Committee Investigation Concluded There Was No Fraud, and the SEC Closed its Investigation***.  On May 10, 2018, Symantec announced that the Audit Committee had

---

[2]   The August 16, 2017 Proxy Statement on which Plaintiff bases some claims (*e.g.*, ¶ 34) was supplemented on September 5, 2017.  The Court may consider the SEC filings cited herein in connection with this motion to dismiss because they are proper subjects of judicial notice, and/or cited and relied upon in the Complaint.  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir. 2004); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (supporting judicial notice of SEC filings and documents referenced in the complaint, as well as Form 4s).

3

commenced an internal investigation in connection with concerns raised by a former employee and that it had "voluntarily contacted the Securities and Exchange Commission." ¶¶ 348-49, 359. On September 24, 2018, Symantec announced the results of the Audit Committee investigation: (1) no restatement of historical financial results (¶ 374); (2) no adjustments to previously reported non-GAAP metrics other than an immaterial revenue deferral impacting preliminary Q4 2018 financial results (¶¶ 374-75); (3) no employment action as to any Section 16 officer, including Messrs. Clark and Noviello (¶ 374); and (4) some personnel action – not concerning Messrs. Clark or Noviello – resulting from conduct inconsistent with the Company's Code of Conduct (¶ 376). Although the Audit Committee noted "relatively weak and informal processes with respect to some aspects of the review, approval and tracking of transition and transformation expenses," there was no finding that any expenses were incorrect or misclassified. ¶¶ 190, 374. Symantec's September press release also disclosed that the SEC had commenced an investigation and that the Company was cooperating. ¶¶ 377-78. Notably, the SEC concluded that investigation after four years with no action against the Company or any of its officers or directors. *See* https://www. prnewswire.com/news-releases/nortonlifelock-announces-conclusion-of-sec-investigation- 301536623.html (last visited Aug. 22, 2022); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 274 (D.N.J. 2007) (taking judicial notice of SEC no-action letter to show close of investigation).

## IV.    ARGUMENT

### A.    The Complaint Should be Dismissed Pursuant to *Forum Non Conveniens.*

Messrs. Clark and Noviello join in and incorporate by reference Symantec's arguments that the Complaint should be dismissed on *forum non conveniens* grounds. Symantec's exclusive forum selection bylaw requires this case to be brought in the Delaware Court of Chancery.

### B.    The Complaint Should be Dismissed Pursuant to Rule 23.1.

Messrs. Clark and Noviello join in and incorporate by reference Symantec's arguments

4

that the Complaint fails to adequately allege demand futility.

In addition, Plaintiff fails to satisfy Rule 23.1 as to all claims asserted against Messrs. Clark and Noviello in their officer capacities.  Demand futility for claims against officers must be assessed separately from demand futility for claims against directors and on a claim-by-claim basis *See Kiger v. Mollenkopf*, 2021 WL 5299581, at *6 (D. Del. Nov. 15, 2021) (demand futility must be analyzed on a director-by-director and a claim-by-claim basis); *In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934, at *36 (Del. Ch. Sept. 7, 2021) (dismissing claims against officers for failure to plead demand futility in the absence of allegations that Directors were beholden and unable to assess).  Absent here are particularized facts establishing relationships between Messrs. Clark and Noviello, on the one hand, and the Director Defendants, on the other hand, that could compromise the independence of a majority of the Board.  Even if Plaintiff's sparse allegations about such relationships (*see* ¶¶ 511-12) could show a lack of independence (they do not), they would still not affect a ***majority*** of the thirteen-member board.  *See United Food & Commercial Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1049 (Del. 2021).  Nor does the Complaint plead interestedness since it does not allege that a majority of the Board participated in any accounting violations, engaged in insider trading or received any other personal benefit rendering them interested.  The claims against Mr. Noviello and Mr. Clark should be dismissed for failure to plead demand futility.

## C.    The Complaint Should be Dismissed Under Rule 12(b)(6).

### 1.    Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Claims that are grounded in fraud must also meet the heightened pleading requirements of Rule 9(b), requiring Plaintiff to "state with particularity the circumstances

surrounding fraud." Fed. R. Civ. P. 9(b).  The 14(a), 10(b) and 20(a) claims must meet the strict pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which "requires that the complaint 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.' The complaint must also allege, with particularity, facts giving rise to a 'strong inference' that each defendant acted with scienter, that is, a 'mental state embracing intent to deceive, manipulate, or defraud.'"  *Bartesch v. Cook*, 941 F. Supp. 2d 501, 506 (D. Del. 2013).[3]

Notably, many of the arguments below were also made against the prior complaint (*See* Dkt. 29 - filed 6/2/22), yet Plaintiff failed to cure the flaws and repeated his deficient claims.

## 2. The Section 14(a) claim should be dismissed.

Messrs. Clark and Noviello join in and incorporate by reference the Independent Directors' motion to dismiss, which demonstrates why Count I fails to state a Section 14(a) claim: (1) Plaintiff pleads no false or misleading statement in the 2017 Proxy; (2) the challenged statements are not material or otherwise actionable; and (3) causation is not alleged.

## 3. The Section 10(b) claim should be dismissed.

Plaintiff fails to satisfy several elements required to state a 10(b) claim: "(1) a material misrepresentation (or omission) in connection with the purchase or sale of a security; (2) scienter, i.e., a wrongful state of mind; (3) reliance; . . . and (5) ''loss causation,' i.e., a causal connection between the material misrepresentation and the loss.'" *Bartesch*, 941 F. Supp. 2d at 506.

### *Plaintiff fails to allege that the challenged statements affected Symantec's repurchase.*

---

[3] Plaintiff lifts many allegations from the Securities Action, which were derived from investigations by counsel in that action over three years ago.  *See* ¶¶ 150-59, 163-64, 185-89.  They should be ignored.  *See also Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (3d Cir. 1994) ("Rule 11 requires an attorney signing a pleading must make a reasonable inquiry *personally*.").

"[T]he 'in connection with' [requirement of 10(b)] requires a causal connection between the claimed fraud and the purchase" of a security. *Semerenko v. Cendant Corp*., 223 F.3d 165, 175 (3d Cir. 2000). Plaintiff must also plausibly plead that the purchaser "entered the transaction at issue in reliance on the claimed misrepresentation or omission (transaction causation)…" *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 425 (3d Cir. 2007). Here, Symantec's decision to repurchase 2.2 million shares was made pursuant to an "accelerated stock repurchase ('ASR') agreement" with financial institutions by March 31, 2017, months *before* the start of the alleged "Relevant Period" on May 10, 2017 and the first alleged misstatements (*see* ¶ 255). Ex. F ("Aug'17 10-Q") at 29 (cited in ¶ 394); Ex. G at 24. Plaintiff erroneously focuses on Symantec's Form 10-K filed May 19, 2017 ("May'17 10-K"), which disclosed that "***on May 19, 2017, . . . the ASR was completed,***" ignoring the fact that the alleged misstatements (all of which occurred after May 10, 2017) could not possibly have affected the price Symantec paid for shares that were purchased months earlier. Ex. G at 24 (cited ¶¶ 258-66, 349). Whether considered a failure of the "in connection with," reliance, and/or transaction causation requirement, this fatal flaw compels dismissal of the 10(b) claim. *Semerenko*, 223 F.3d at 175; *McCabe*, 494 F.3d at 425.

*Plaintiff fails to plead justifiable reliance.* The 10(b) claim must also be dismissed because Plaintiff cannot allege that Symantec justifiably relied on its own purported misstatements. *See, e.g., Ray v. Karris*, 780 F.2d 636, 641 (7th Cir. 1985); *Elfers v. Gonzalez*, 2020 WL 7264272, at *3 (D. Del. Dec. 10, 2020) (dismissing derivative 10(b) repurchase claim because directors "could not have both lied about the wrongdoing and yet been tricked by those lies").

*Plaintiff fails to allege material falsity.* Even by Plaintiff's own allegations, his 10(b) claim is limited, at most, to only those statements made on or before May 19, 2017 (the date the ASR was completed), which include excerpts from Symantec's (i) earnings release in its May 10,

2017 Form 8-K (¶ 255), (ii) earnings call on May 10, 2017 (¶¶ 256-57), and (iii) May'17 10-K filed May 19, 2017 (¶¶ 258-66) (the "May 2017 Statements").  Plaintiff quotes vast passages from these materials, but nowhere does he actually identify with specificity (as he must under Rule 9(b) and the PSLRA), *which* portions of the May 2017 Statements were false when they were made and *why* each statement is false. *Bartesch*, 941 F. Supp. 2d at 506.[4]

*Puzzle pleading is inadequate.*  The Complaint claims that the challenged statements failed to disclose ten categories of alleged mismanagement that are generically listed in a single paragraph applying to *all* of the challenged statements.  ¶ 341.  Such improper puzzle pleading and group pleading flies in the face of the PSLRA, Rule 9(b) and Rule 8(a).  *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 2017 WL 3891676, at *3 (D. Del. Sept. 6, 2017); *accord Int'l Constr. Prods. LLC v. Caterpillar Inc.,* 2020 WL 4584354, at *6 (D. Del. Aug. 10, 2020) (dismissing complaint because "puzzle pleading does not satisfy" Fed. R. Civ. Proc. 8).

*Improper revenue recognition allegations fail to plead material falsity.*  The Complaint contains no support for its claim that the May 2017 Statements were false and misleading because the Company improperly recognized revenue (¶ 341, reason 1).  Many of these assertions are vague generalizations about conduct without any dates, which fail to satisfy the PSLRA.  *E.g.,* ¶¶ 150, 151, 153-54, 158-59.  For example, Plaintiff's allegations that deals were "shove[d]" or "pushed through," or "pulled forward" at the end of the quarter with incentives or other discounts (*see* ¶¶ 151-52, 154-55) are not sufficient.  Plaintiff fails to plead whether any revenue was actually recognized improperly, when such improper recognition occurred or any facts to establish Messrs. Clark and Noviello acted with fraudulent intent.  Moreover, these allegations are recycled from

---

[4] No 10(b) claim can be based on the remaining statements because they occurred after Symantec's share repurchase was completed. ¶¶ 267-340 (challenging statements from Aug. 2, 2017-Feb. 2, 2018).  Regardless, falsity for those statements would still fail for the same reasons listed below.

the Securities Action, and even if such recycling were proper (it is not), the Securities Action rulings confirm the allegations are inadequate. *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 2491935, at *3 (N.D. Cal. June 14, 2019) (dismissing claims that "recognized revenue on period-end sales that (i) did not have signed contracts, (ii) did not go through the appropriate approval channels, (iii) contained unapproved extended terms, and/or (iv) were to customers who were unable or unwilling to pay, all of which resulted in overstated reported revenue and understated deferred revenue"); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *4-*5 (N.D. Cal. Oct. 2, 2019) (finding these allegations do not plead material falsity).

Other assertions about revenue recognition (including allegations about supposed employee retaliation and a transaction with Oracle) do not relate to events before the May 2017 statements. *E.g.,* ¶¶ 141, 144, 156-57, 160-63. Similarly, Plaintiff purports to challenge the May 2017 Statements on the grounds that defendants failed to disclose that contract duration was increasing (¶ 341, reason 6; ¶¶ 171-76), yet the earliest allegations that "Symantec officials acknowledged that contract terms were increasing" is from "June/July 2017," after the May 2017 Statements were made. (¶ 172).[5] And the purported employee "retaliation" (¶ 341, reason 7) allegedly occurred in or after June 2018 (¶¶ 160-62), well past the May 2017 Statements.

This leaves only two flawed grounds on which Plaintiff asserts that revenue was improperly recognized. First, Plaintiff makes averments about so-called "ghost revenue" (¶¶ 10, 364-66), which fail because the amounts and nature of Symantec's deferred revenue adjustments were disclosed in Symantec's 8-K filings starting with the first quarter after the Blue Coat acquisition. *See* Exs. B-E, H (compilation of Form 8-Ks). Second, relying on a "former Symantec Account

---

[5] Plaintiff cites an April 26, 2017 email and deposition testimony from the Securities Action (¶ 174), but these documents merely reflect Mr. Clark *asking about* contract duration and potential impacts. It does not show that he *knew about* any confirmed impact of contract duration.

Manager cited in the Securities Class Action," Plaintiff alleges that revenue from a $13 million Verizon transaction and five similar transactions was "double-booked" in Q4'17 and Q1'18. (¶¶ 163-68). Plaintiff, however, ignores that Lead Counsel later disclaimed this allegation and filed a declaration stating, under penalty of perjury, that "Lead counsel worked extensively with an expert accountant—but aside from the $12 million in prematurely booked revenue in 4Q18, did not identify *any* other instances where Defendants improperly booked revenue." Ex. I, ¶ 17.

       ***Allegations regarding T&T misclassifications fail to plead material falsity.*** Plaintiff does not plead material falsity based upon purported Transition & Transformation ("T&T") misclassifications because despite numerous allegations of supposed "aggressive" approaches to cost classification, increased "pressure," and "scrutiny" on accounting employees (*see* ¶¶ 186, 188-89, 209), there are no allegations that this pressure actually caused a T&T misclassification (¶ 341, reason 3). Likewise, Plaintiff complains about insufficient controls (¶¶ 251-52) and risks (¶¶ 344-47) concerning T&T but fails to tie either to actual misclassifications. The mere possibility of wrongdoing does not support Plaintiff's claims, and courts in this circuit have rejected similar "tone at the top" or pressurized environment theories. *E.g., Johansson v. Ferrari*, 2015 WL 5000848, at *2 (D. Del. Aug. 20, 2015) ("claim must be supported by well-pleaded facts that permit the court to infer more than a mere possibility of misconduct" quoting *Iqbal*); *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *18 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018) ("aside from the allegation that senior management created a pressurized environment to meet sales goals, Plaintiffs do not provide particularized allegations explaining how management's tone and target goals were inappropriate, or how the environment actually caused Company employees to misstate the financials").

       Plaintiff's reliance on Abby Morrill's (post-May 2017) comments regarding purported

T&T misclassifications (¶¶ 207-09) does not support falsity as to the May 2017 Statements. It is also misplaced because Ms. Morrill admitted under oath that no T&T expenses were misclassified (*i.e.*, no wrongdoing occurred). Ex. J. Finally, Plaintiff claims that two projects were misclassified as T&T (¶¶ 196-98 [referencing ASC 606 and GTM Readiness projects]) based solely on an email of an employee stating that "much of the classifications" were "debatable" – but no allegations show that the "debatable" classifications were erroneous.

*Plaintiff fails to plead scienter.* The Complaint fails to plead particularized facts that "giv[e] rise to a 'strong inference' that [either Mr. Clark or Mr. Noviello] acted with scienter, that is, a 'mental state embracing intent to deceive, manipulate, or defraud'" with respect to the May 2017 Statements (the only actionable statements for Plaintiff's 10(b) claim). *In re NutriSystem, Inc. Sec. Litig.,* 653 F. Supp. 2d 563, 580 (E.D. Pa. 2009) (post-October 4, 2017 conduct could not establish basis for claim stemming from October 2017); *Pipefitters Loc. No. 636 Defined Ben. Plan v. Zale Corp.*, 499 F. App'x 345, 350 (5th Cir. 2012) ("after-the-fact admissions that it 'did not maintain effective control over certain account reconciliations,'" did not establish scienter).

Since Plaintiff fails to plead that any revenue recognition errors or T&T misclassifications occurred, he cannot base scienter on his generalized allegations of potential misconduct. *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) ("A complaint must also 'state with particularity facts giving rise to a strong inference that the defendant acted with . . . 'scienter,' which is defined in this context as a 'knowing or reckless' mental state "embracing intent to deceive, manipulate, or defraud."); *Starr Invs. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*, 2014 WL 4180331, at *3 (D. Del. Aug. 21, 2014) (same). Even if these bare allegations were enough to plead material falsity (they are not), they are not sufficiently linked to either Mr. Clark or Mr. Noviello to plead scienter. Plaintiff's "double-booking" revenue recognition allegations

11

(¶¶ 163-66) never mention Mr. Noviello.  The only allegations of Mr. Clark's involvement are that he "was aware of this issue, as he was the only person who could approve the account managers payout for the deals in the fourth quarter." ¶ 166.  Not only does Mr. Clark's approval of payouts have nothing to do with revenue recognition, it does not show he knew revenue was double-booked.  *See Winer Fam. Tr. v. Queen*, 2005 WL 102936, at *14 n.14 (E.D. Pa. Jan. 13, 2005), *aff'd*, 503 F.3d 319 (3d Cir. 2007) ("It is…tenuous to impute knowledge of cumulative accounting errors generally to operational officers and directors of a corporation." (internal cite omitted)).

As to T&T, for Mr. Clark, Plaintiff at most alleges misclassification of expenses relating to "ASC 606 project" and the "GTM Readiness project."  ¶¶ 196-98.  But as is shown above, the only support for this is an email forwarded to Mr. Clark discussing a strategy to reduce the use of consultants, which contains one individual's off-hand comment that "much of the classifications" are "debatable" in his "opinion."  Ex. K.  This wishy-washy email (with no context of the emailer's technical accounting expertise) is insufficient to support any inference (let alone a strong inference) that Mr. Clark knew or should have known that T&T misclassifications were occurring.

As to Mr. Noviello, Plaintiff alleges no facts supporting a strong inference of scienter as to T&T misclassifications.  The February 4, 2017 (¶ 216) and February 2, 2017 (¶¶ 222-23) emails say nothing about whether either project was misclassified or even "debatable."  *See* Exs. K and L.  Likewise, a February 28, 2017 email regarding a draft presentation stating that "potentially none of the T&T expenses incurred in FY17 will continue to receive T&T treatment in FY18" (¶ 217) fails because the accounting treatment of expenses can change over time, and there is no suggestion in the email that FY17 T&T treatment was, in fact, improper.  Ex. M.

**Other allegations do not establish scienter.**  Plaintiff's attempt to use Messrs. Clark and Noviello's compensation, which was publicly disclosed and approved by shareholders, to show

motive and opportunity (*e.g.*, ¶ 233) fails as the "Third Circuit caselaw makes clear that 'motive and opportunity' may no longer serve as an independent route to scienter." *Starr Invs.*, 2014 WL 4180331, at *3 (citing *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009)). Plaintiff's general allegations that Messrs. Clark and Noviello attended various Board or Board Committee meetings at which various issues (including revenue recognition and T&T costs) were discussed is insufficient to establish scienter.  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 281-82 (3d Cir. 2006) (affirming dismissal of 10(b) claims based on allegation that audit committee members "had access to unspecified business records and a duty to review them"). Similarly, the SEC and Audit Committee Investigations (*e.g.*, ¶¶ 13, 234, 341) cannot support an inference of scienter.  *Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 469 (E.D. Pa. 2019) ("it is well-established that an 'investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter" and "such an investigation 'is not evidence of fraud, or even negligence or mistake.'").  To the contrary, the Audit Committee Investigation found no wrongdoing by Messrs. Clark or Noviello, undermining scienter.  *See Kates on behalf of MetLife, Inc. v. Kandarian*, 2020 WL 4287374, at *10 (D. Del. July 27, 2020), *report and recommendation adopted*, 2020 WL 12432745 (D. Del. Sept. 8, 2020) ("Although it identified specific control weaknesses in MetLife's processes that required corrective action, it also contained a "Manager Action Plan" to implement the correction. Nothing about the audit report itself suggests that control weaknesses were being ignored.").  Similarly, that the SEC investigation closed with no recommendation of an enforcement action (especially combined with the Audit Committee findings and fact that Messrs. Clark and Noviello continued signing SEC filings and auditors accepted their certifications [*See* Ex. N]) supports a competing inference that they lacked scienter.  *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d

13

719, 730 (D. Del. 2014) (a "strong inference [of scienter] sufficient to survive" must be "at least as compelling as any opposing inference one could draw from the facts alleged.").

### 4. The Section 20(a) claim should be dismissed.

Plaintiff's failure to plead a 10(b) or 14(a) claim defeats his follow-on claim under 20(a). *City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014) (affirming dismissal of 20(a) claim where complaint failed to plead underlying violation). Moreover, because this is a derivative case in which Symantec is the purported victim, Plaintiff cannot base a 20(a) claim on Symantec being the ***primary violator***. *In re Verisign Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) ("[I]t is logically impossible for a corporation on whose behalf a derivative action is brought to also be a primary violator."). This claim also fails as to Mr. Noviello because Plaintiff does not plead how a non-board member CFO could control the Board. *Duncan v. Vantage Corp.*, 2019 WL 1349497, at *5 n.4 (D. Del. Mar. 26, 2019) (rejecting conclusory control allegation).

### 5. The Court should decline to exercise supplemental jurisdiction.

Because all of Plaintiff's federal claims fail, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining Delaware law claims under 28 U.S.C.A. § 1367(c)(3). *See* Ind. Director's Br. at 20 (citing *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000); *United States v. Medco Health Sols., Inc.*, 2017 WL 63006, at *13 (D. Del. Jan. 5, 2017)).

### 6. The breach of fiduciary duty claim should be dismissed.

To establish a breach of fiduciary duty, Plaintiff must plead that Messrs. Clark and Noviello acted with gross negligence. This is a "difficult" burden "involv[ing] more than simple carelessness" and requires "'conduct that constitutes reckless indifference or actions that are without the bounds of reason.'" *In re Baker Hughes Inc. Merger Litig.*, 2020 WL 6281427, at *15 (Del. Ch. Oct. 27, 2020). This "difficult" burden is even harder because Plaintiff must rebut "the business judgment rule's presumption that officers and directors act loyally and in good faith when

14

making business decisions in their fiduciary capacity." *Am. Bottling Co. v. Repole*, 2020 WL 7787043, at *6 (Del. Super. Ct. Dec. 30, 2020); *accord City of Warren Gen. Employees' Ret. Sys. v. Roche*, 2020 WL 7023896, at *10 (Del. Ch. Nov. 30, 2020) (plaintiffs need to "rebut the business judgment rule" in claim against officers). Because Plaintiff's claim is based on purportedly fraudulent misstatements and omissions, it sounds in fraud and must meet the heightened pleading requirements of Rule 9(b). *Claude Worthington Benedum Found. v. Bank of New York Mellon Corp.*, 422 F. Supp. 3d 940, 945 (W.D. Pa. 2019), *aff'd*, 849 F. App'x 36 (3d Cir. 2021) (dismissing breach of fiduciary duty based on materially false statements under 9(b)).

Plaintiff's extravagant claims that Messrs. Clark and Noviello breached their fiduciary duties by failing to maintain appropriate oversight and controls (¶ 551), causing Symantec to engage in compensation misconduct (¶ 552), causing the Company to make "false and misleading" statements (¶ 553), failing to rectify these alleged wrongs (¶ 554, 556), and causing the Company to engage in "fraudulent schemes" (¶ 557) all fail because the Complaint fails to plead any particularized facts that Messrs. Clark and Noviello acted with the requisite gross negligence.[6]

### *Plaintiff fails to plead a breach of fiduciary claim based on alleged revenue misconduct.*

The only transaction that Plaintiff claims impacted Symantec's revenue is a Q4'18 transaction with Oracle. ¶ 144. Following the Audit Committee Investigation, Symantec announced that it was moving an immaterial $12 million of revenue from a transaction with Oracle to a later quarter – ensuring all transactions were recorded appropriately in the correct period. *See id.* The Company did not restate earnings or revenue, nor does the Complaint allege it did. Plaintiff does not even attempt to assert a claim against Mr. Noviello based on the Oracle revenue,

---

[6] The reasons Plaintiff's effort to plead material falsity or scienter as to his 10(b) claim fail (*supra* §IV(C)(3)) also defeat the argument that Messrs. Clark or Noviello were grossly negligent.

alleging instead that Mr. Noviello informed Mr. Clark of the revenue recognition requirements, as conveyed to him by Mr. Brown.  ¶ 142.  As to Mr. Clark, Plaintiff's claim is based entirely on a single text message he sent to an Oracle representative.  ¶ 143.  With no basis, Plaintiff infers that Mr. Clark "disregard[ed]" a "warning" that revenue could not be recorded if future functionality was promised. *Id.*  However, the plain language of Mr. Clark's text message shows that he ***declined*** to agree to future functionality. *Id.* (Symantec "'can't send a loi or a zero dollar sow… we will get it done but we can't contract to it.'").  That Symantec's accounting team later applied a technical accounting rule to determine revenue deferral was appropriate (*id.*) has nothing to do with Mr. Clark's state of mind, does not overcome the business judgment rule, nor shows gross negligence.

Plaintiff's allegations that Messrs. Clark and Noviello "[m]ade misleading statements concerning increasing duration of sales contracts" (¶¶ 175, 341 reason 6) fails to support a breach of fiduciary duty.  Other than lumping 50 paragraphs of allegations together, Plaintiff does not identify any statement rendered misleading by this purported omission.  Moreover, any assertion that Symantec was required to disclose contract duration to shed light on revenue growth statistics is contradicted by the Complaint.  The allegations reflect that Symantec did not have reliable data on contract length prior to January 2018 and there is no allegation that Defendants possessed actual knowledge of specific factual information they could have disclosed.  *In re Baker*, 2020 WL 6281427, at *13 ("Delaware law does not require fiduciaries to disclose information they do not possess."); *City Pension Fund for Firefighters & Police Officers in Miami v. The Trade Desk, Inc.*, 2022 WL 3009959, at *19 (Del. Ch. July 29, 2022) ("The Board was not obligated to provide additional possibilities, opinions, or characterizations as to a Dilution Trigger date that it did not have."); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 760-61 (7th Cir. 2007) ("Prudent managers conduct inquiries rather than jump the gun with half-formed stories as soon as a problem

16

comes to their attention.… Taking the time necessary to get things right is both proper and lawful.").[7] Further, there was no duty to disclose that increasing duration was driving growth (an unverified proposition) because Plaintiff pleads no facts to suggest that Mr. Clark (or anyone else) gave the opposite impression (*i.e.*, duration was stagnant or decreasing) or suggested that duration had no impact on growth.

***Plaintiff fails to plead a breach of fiduciary duty claim based on allegedly misclassified T&T expenses.*** Plaintiff's reliance on unidentified witnesses from the Security and IT departments (¶¶ 185-89) [lacking expertise or access to identify accounting misclassifications]; statements from a former accounting team member (¶ 207) [who testified under oath that no T&T expenses were misclassified]; cherry-picked comments from the Chief Accounting Officer, Defendant Garfield (¶¶ 202-05, 209-11) [eliding that Messrs. Clark and Noviello initiated a review in response to those very concerns]; and the EY review of Symantec's accounting practices (¶¶ 212-14) [finding no misclassified expenses] fail to support a fiduciary duty claim. *See Kahnert v. Kotick,* 2022 WL 2167792, at *7 (C.D. Cal. May 20, 2022) (no likelihood of liability for fiduciary duty breach when "several of the purported 'red flags' also include descriptions of actions taken to combat noncompliance"); *Buckley Family Trust v. McCleary*, 2020 WL 1522549, at *11 (Del. Ch. Mar. 31, 2020) (meaningful reaction to identified problems shows fiduciary "plainly" did not act with

---

[7] Plaintiff's selective quotes underscore that Symantec's duration analysis was ongoing. In April 2017, Mr. Clark was "asking about the effect of multiyear [contracts]." ¶ 174. In May 2017, Mr. Noviello "requested that employees provide him with Symantec's contract duration analysis." *Id.* Even the June and July 2017 emails characterizing the analysis as "look[ing] pretty straightforward" and suggesting that the email authors "[c]an't find any fault in the analysis" (¶ 172) do not help Plaintiff since no facts are plead suggesting that these individuals were in a position to opine on the soundness of the purported analysis. Nor does the Complaint allege that Messrs. Clark or Noviello received these communications. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 995-96 (9th Cir. 1999) (citing *Arazie v. Mullane*, 2 F.3d 1456, 1466-67 (7th Cir. 1993) (no facts alleged as to who prepared projected figures or when, who reviewed them, or if they were confirmed)).

reckless indifference). Indeed, that Messrs. Clark and Noviello "hired [EY] to investigate and parse through Symantec's T&T costs and non-GAAP measures" (¶ 212) undermines any breach. *Payne v. DeLuca*, 433 F. Supp. 2d 547, 579 (W.D. Pa. 2006) ("The fact that the Company—not an outside entity—initiated the inquiry urges against an across the board inference of scienter.").

> ***Other miscellaneous allegations do not support breach of fiduciary duty.*** Plaintiff pleads nothing to suggest that Messrs. Clark and Noviello were grossly negligent with respect to internal controls merely because the Audit Committee later found the controls could be improved. Nor can Plaintiff rely on generalized allegations regarding Messrs. Clark and Noviello's attendance at various Board or Board Committee meetings where commonplace issues such as revenue and non-GAAP measures were discussed. *See In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, 565 (D.N.J. 2011); *In re Suprema*, 438 F.3d at 281-82. As for the Audit Committee Investigation, it merely identified a weakness with respect to some aspects of the review, approval and tracking of transition and transformation expenses, and the deferral of an immaterial $12 million in revenue to a subsequent quarter. There was no finding of misconduct by and no employment action taken against Mr. Clark or Mr. Noviello. Nor does Plaintiff allege that the control "weakness" resulted in any incorrect accounting entry.[8]

**7.      The *Brophy* claim should be dismissed.**

Plaintiff's claim against Messrs. Clark and Noviello for insider sales under *Brophy v. Cities Service Co.*, 70 A.2d 5 (Del. 1949) should be dismissed because a party asserting a *Brophy* claim must identify the specific material nonpublic information ("MNPI") and plead that the defendants not only possessed but also traded based on that information. *See In re Camping World Holdings,*

---

[8] Nor can Plaintiff base a breach of fiduciary duty claim on allegations about purported employee retaliation (¶¶ 160-62, 341 reason 7). Nothing in these allegations has any connection to Messrs. Clark or Noviello.

18

*Inc. S'holder Deriv. Litig.*, 2022 WL 288152, at *9 (Del. Ch. Jan. 31, 2022).  The Complaint pleads

only that Messrs. Clark and Noviello sold shares on certain dates.  ¶¶ 36, 41.  It does not identify

what MNPI they supposedly possessed nor plead facts showing their trades were motivated by that

MNPI.  *Gordon v. Sonar Cap. Mgmt. LLC*, 962 F. Supp. 2d 525, 529 (S.D.N.Y. 2013) (must

identify with factual specificity what the alleged MNPI information was).  If the MNPI were the

purported accounting irregularities, that fails because Plaintiff pleads no facts establishing a

misclassified T&T expense or any incorrectly recognized revenue (other than Oracle which

occurred well after the last stock sale).  As for "ghost revenue," Symantec's SEC filings disclosed

its treatment of such revenue, including the amounts, so it also cannot be MNPI.

 Nor has Plaintiff sufficiently pled scienter.  "If a defendant sells only a small portion of her

holdings and retains a 'huge stake in the company[,]' then it is difficult reasonably to infer she was

'fleeing disaster or seeking to make an unfair buck[.]'"  *Kahnert*, 2022 WL 2167792, at *9.  Indeed,

"[m]erely pleading the volume of trades is insufficient, especially where it is unclear what sort of

trades the Insider Selling Defendants historically made or even how many shares they held in

total."  *Id.* at *10; *Tilden v. Cunningham*, 2018 WL 5307706, at *20 (Del. Ch. Oct. 26, 2018)

("'[n]o inference can be drawn from th[e] simple fact' that defendants 'engaged in trades shortly

after [the company engaged in a transaction or released financial information].' Nor can the Court

infer scienter based only on the size of the trades.").  But that is all Plaintiff has pled here —the

amounts and dates of certain trades.  This is woefully insufficient to satisfy *Brophy*, particularly

when another federal court examined these same trades and found the amounts did not support an

inference of scienter and that the fact these individuals accumulated more shares of Symantec

between May 11, 2017 and August 2, 2018 "strongly rebuts an inference of scienter." *SEB*, 2019

WL 2491935, at *9.  Plaintiff has not pled a *Brophy* claim.

### 8.    The unjust enrichment claim should be dismissed.

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Kaufman v. Allemang*, 70 F. Supp. 3d 682, 696–97 (D. Del. 2014); *see also Taylor v. Kissner*, 893 F. Supp. 2d 659, 674 (D. Del. 2012).  Plaintiff's failure to plead any "bad faith conduct" (¶ 563) by Messrs. Clark and Noviello dooms these claims based on their compensation and insider sales.  *Supra* § IV(C)(6). The "insider trade" theory also fails because Plaintiff does not (nor can he) plead that Symantec paid the stock sale proceeds.  This claim should be dismissed.

### 9.    The waste claim should be dismissed.

"A claim of waste requires the pleading of particularized facts demonstrating that the consideration received by the corporation was so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation paid.  Corporate waste is confined to unconscionable cases where directors irrationally squander or give away corporate assets." *Taylor*, 893 F. Supp. 2d at 673.  Plaintiff alleges waste based on Symantec paying: (i) excessive incentive payments to Messrs. Clark and Noviello (¶ 567), (ii) legal fees and potential loss of financing and customers because they no longer trust the company (¶ 568), and (iii) inflated prices for the stock repurchase (¶ 569).  But, as addressed above, Plaintiff has not sufficiently alleged any misconduct by Messrs. Clark and Noviello nor facts showing why the compensation paid to them was not justified nor how they are responsible for fees relating to the investigation or securities litigation.  Moreover, as addressed above, Plaintiff has not pled how a stock repurchase decided upon and paid in March 2017 could have been rendered "unconscionable" by purported misstatements or misconduct occurring months later. The waste claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: August 25, 2022

OF COUNSEL:

Susan D. Resley, *Admitted Pro Hac Vice*
susan.resley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone:      (415) 442-1000
Facsimile:      (415) 442-1001

Michael Kichline, *Admitted Pro Hac Vice*
michael.kichline@morganlewis.com
1701 Market St.
Philadelphia, PA 19103-2921
Telephone:      (215) 963-5000
Facsimile:      (215) 963-5001

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market St., Suite 2201
Wilmington, DE 19801
Telephone:   (302) 574-7290
Facsimile:    (302) 574-3001
jody.barillare@morganlewis.com

*Attorneys for Defendants Gregory S. Clark
And Nicholas R. Noviello*

21