IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOYD MILLIKEN, derivatively on behalf of NORTON LIFELOCK INC. f/k/a SYMANTEC CORP., <br><br> Plaintiff, <br> v. <br><br> GREGORY S. CLARK, NICHOLAS R. NOVIELLO, MARK S. GARFIELD, FRANK E. DANGEARD, KENNETH Y. HAO, DAVID HUMPHREY, GERALDINE B. LAYBOURNE, DAVID L. MAHONEY, ROBERT S. MILLER, ANITA M. SANDS, DANIEL H. SCHULMAN, V. PAUL UNRUH, and SUZANNE M. VAUTRINOT, <br><br> Defendants, <br> and <br><br> NORTON LIFELOCK INC. f/k/a SYMANTEC CORPORATION, <br><br> Nominal Defendant. | C.A. No. 18-cv-01848-RGA |

**MARK S. GARFIELD'S OPENING BRIEF IN SUPPORT OF
MOTION TO DISMISS AND JOINDER IN
GREGORY S. CLARK AND NICHOLAS R. NOVIELLO'S MOTION TO DISMISS
VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23.1 AND 12(b)(6)**

OF COUNSEL:

Miles Ehrlich
Katharine Kates
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, California 94710
(510) 548-3600

Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
Howard W. Robertson IV (No. 6903)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19899
(302) 467-4400

*Attorneys for Defendant Mark S. Garfield*

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 3

III. ARGUMENT .................................................................................................................... 3

    A. All the claims against Mr. Garfield should be dismissed pursuant to *Forum Non Conveniens* ................................................................................................... 3

    B. The Complaint should be dismissed under Rule 23.1............................................ 4

    C. The Complaint Should be Dismissed under Rule 12(b)(6) .................................... 5

        1. Legal Standards .......................................................................................... 5

        2. The Section 14(a) claim should be dismissed ............................................ 6

        3. The Section 10(b) and Section 20(a) claims should be dismissed ............. 6

            a. Elements of a Section 10(b) claim ................................................. 6

            b. Plaintiff fails to plead the challenged statements affected Symantec's repurchase, justifiable reliance, or material falsity ............................................................................................. 6

            c. Plaintiff fails to plead facts demonstrating falsity or scienter in connection with statement made by Mr Garfield ....................... 7

    D. The breach of fiduciary duty claim fails ............................................................... 12

    E. The unjust enrichment claim fails ........................................................................ 13

    F. The waste claim fails ............................................................................................ 14

IV. CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 5

*Bartesch v. Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013) ........................................................................................... 6

*Behrmann v. Brandt*,
  2020 WL 4432536 .................................................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 5

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) .................................................................................................... 11

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................................................. 5, 9

*City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*,
  686 F. Supp. 2d 404 (D. Del. 2009) ........................................................................................ 10

*Claude Worthington Benedum Found. v. Bank of New York Mellon Corp.*,
  422 F. Supp. 3d 940 (W.D. Pa. 2019), *aff'd*, 849 F. App'x 36 (3d Cir. 2021) ......................... 13

*Craftmatic Sec. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. 1989) ...................................................................................................... 9

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ................................................................................................. 12

*Duncan v. Vantage Corp.*,
  2019 WL 1349497 (D. Del. Mar. 26, 2019) ............................................................................ 12

*Frank v. Elgamal*,
  2014 WL 957550 (Del. Ch. Mar. 10, 2014) ............................................................................ 14

*In re Boeing Co. Deriv. Litig.*,
  2021 WL 4059934 (Del. Ch. Sept. 7, 2021) .............................................................................. 4

*In re Citigroup Inc. Shareholder Deriv. Litig.*,
  964 A.2d 106 (Del. 2009) ........................................................................................................ 13

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................................... 13

*In re LendingClub Corp. Derivative Litig.*,
   2019 WL 5678578 n.128 (Del. Ch. Oct. 31, 2019) ................................................................. 4

*In re Resolute Energy Corp. Sec. Litig.*,
   2021 WL 327385 (D. Del. Feb. 1, 2021), *aff'd*, 2022 WL 260059 (3d Cir. Jan. 27, 2022) ..... 12

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996) ..................................................................................................... 9

*Instit. Invs. Grp.* v. *Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ................................................................................................... 8

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ........................................................................................................... 7, 8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   3:18-cv-02902-WHA ............................................................................................... 3, 10, 11

*Taylor v. Kissner*,
   893 F. Supp. 2d 659 (D. Del. 2012) ..................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 5, 10

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
   176 F. Supp. 3d 387 (D. Del. 2016) .................................................................................. 7, 8

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ................................................................................................. 10

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................................... 5, 6, 7

Private Securities Litigation Reform Act of 1995 .................................................................. 5, 9

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................................................... 5, 8, 13

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 5

Federal Rule of Civil Procedure 23.1 ..................................................................................... 2, 4

Securities and Exchange Commission Rule 10b-5 (17 C.F.R § 240.10b-5) ............................. 7

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS

Defendant Mark S. Garfield, the former Chief Accounting Officer of Symantec Corporation n/k/a NortonLifeLock, Inc. ("Symantec" or the "Company"), joins in the motions to dismiss filed by the Company, the Independent Directors, and Defendants Gregory S. Clark and Nicholas R. Noviello, and respectfully moves to dismiss Plaintiff's Verified Amended Shareholder Derivative Complaint filed July 11, 2022 ("Complaint", D.I. 47).

In an effort to support his claims under the Securities Exchange Act, Plaintiff provides a grab bag of allegations referencing internal emails, audit committee meetings, and references to public statements spanning 176 pages and 572 paragraphs of the Complaint.[1] But the only statements attributable to Mr. Garfield—who resigned on August 7, 2017—are contained within the 2017 10-K, filed on May 19, 2017, a single document that he signed eight days into the relevant period. ¶ 258. These statements are not actionable because Plaintiff alleges no facts indicating that the statements were false. Instead, the statements accurately reflected Symantec's actual revenue recognition policy, the 10-K's compliance with GAAP principles, and the company's actual non-GAAP transition costs. Indeed, Symantec has not restated or corrected any of the GAAP or non-GAAP metrics in the 2017 10-K, even after the Audit Committee undertook an extensive internal investigation. ¶¶ 374-75. Likewise, an SEC investigation into accounting practices at Symantec concluded without any action against the company or its officers, directors, or employees. *See* https://www.prnewswire.com/news-releases/nortonlifelock-announces-conclusion-of-sec-investigation-301536623.html. Further, Plaintiff fails to allege facts that support a reasonable (much less the required *strong*) inference that Mr. Garfield knew or could have known that the statements in question were false when made. For these reasons, the 10(b)

---

[1] Citations to "¶ __" refer to paragraphs of the Complaint. All internal citations, footnotes, and quotation marks are omitted unless otherwise stated.

claim must be dismissed as to Mr. Garfield. Further, because Plaintiff alleges no facts indicating that Mr. Garfield, in his role as Chief Accounting Officer, had any authority to direct or control the statements made by Symantec or its most senior officers (Defendants Noviello and Clark) the Section 14(a) claim—based on a proxy statement filed *after* Mr. Garfield left the company—and the Section 20(a) claim should also be dismissed.

In addition to the failure to state a securities fraud claim against Mr. Garfield, the Complaint should be dismissed for the following additional reasons:

1. Mr. Garfield joins in the Company's motion to dismiss based on *forum non conveniens* and under Federal Rule of Civil Procedure 23.1 ("Rule 23.1"). The Company's forum selection bylaw requires derivative claims to be brought in the Delaware Court of Chancery—making the present forum improper. Also, the Complaint should be dismissed under Rule 23.1 because Plaintiff has failed to make a demand or otherwise plead particularized facts demonstrating that seven (a majority) of the thirteen directors at the time the action was filed could not properly consider a demand. More, the case against Mr. Garfield should be dismissed because Plaintiff fails to plead particularized facts sufficient to demonstrate that the Symantec Board could not have properly evaluated a demand to sue Mr. Garfield in his capacity as an officer. These reasons alone suffice for dismissal.

2. Mr. Garfield also joins in the Independent Directors' and Defendants Clark and Noviello's motions to dismiss the claims for violations of Section 14(a), 10(b) and 20(a) of the Securities Exchange Act. Specifically: a) the Section 14(a) claim is deficient because Plaintiff fails to plead falsity or causation; b) the Section 10(b) claim is deficient because Plaintiff fails to allege that any challenged statement affected Symantec's stock repurchases and otherwise fails to plead falsity and scienter; and c) the Section 20(a) claim fails because Plaintiff has not pled an

2

underlying violation of Section 14(a) or 10(b).

3. The state law claims for breach of fiduciary duty, unjust enrichment, and corporate waste in Counts 4 through 6, respectively, must be dismissed. Plaintiff fails to allege facts demonstrating bad faith failure of oversight or the knowing dissemination of a misleading statement by Mr. Garfield—requiring the dismissal of the claim for breach of fiduciary duty. Further, the unjust enrichment claim fails because there are no allegations that Mr. Garfield received any compensation apart from his regular salary, benefits, and unspecified bonuses; it is thus duplicative of the breach of fiduciary duty claim. Finally, the claim for corporate waste is deficient because Plaintiff does not allege that Mr. Garfield, who left the Company in August of 2017, was involved in any of the decision-making upon which this claim is based.

For all these reasons, the Complaint should be dismissed as to Mr. Garfield.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Mr. Garfield joins and incorporates by reference the Nature and Stage of the Proceedings and Statement of Facts set out in Messrs. Clark and Noviello's opening brief in support of their motion to dismiss. It bears emphasis that in the related securities class action filed in the U.S. District Court for the Northern District of California, Judge Alsup dismissed Mr. Garfield and Mr. Noviello from the action *at the pleading stage*. *SEB Inv. Mgmt. AB v. Symantec Corp.*, 3:18-cv-02902-WHA.

## III. ARGUMENT

### A. All the claims against Mr. Garfield should be dismissed pursuant to *Forum Non Conveniens*

Mr. Garfield joins in the arguments made by the Company in its motion to dismiss on *forum non conveniens* grounds. As set forth in Section IV.A, of Symantec's Motion to Dismiss, the Company's forum selection bylaw requires derivative claims to be brought in the Delaware Court

3

of Chancery.

### B. The Complaint should be dismissed under Rule 23.1

Mr. Garfield joins in the arguments made by the Company in its motion to dismiss for failure to make a demand under Rule 23.1, because Plaintiff has not shown that a majority of the board at the time he filed his suit could not properly evaluate a demand. *See* Section IV.B. of Symantec's Motion to Dismiss.

Mr. Garfield also joins Messrs. Clark and Noviello's arguments on demand futility with respect to the officer defendants. *See* Section IV.B, of Clark and Noviello's Motion to Dismiss. As set forth there, Plaintiff must separately meet the demand futility standard as to each of the officers individually. *See In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934, at *36 (Del. Ch. Sept. 7, 2021). To meet this burden, Plaintiff must plead more than simply asserting that the directors and officers are subject to liability for the same claims, or that they participated in the same scheme. *Id*. Instead, plaintiff must allege with particularity that a majority of the director defendants are beholden to or dominated by the particular officer defendant in question, such that they are unable to exercise business judgment over the claim as to that individual. *Id*. Where there are no allegations demonstrating that the majority of the board lacked the ability to impartially evaluate a claim against an officer, the complaint must be dismissed as to that officer. *See In re LendingClub Corp. Derivative Litig.,* 2019 WL 5678578, at *17, n.128 (Del. Ch. Oct. 31, 2019) (in dismissing action for lack of demand futility, the court noted that there were no allegations separately demonstrating the board lacked the ability to impartially evaluate a claim against a *former* officer).

In the present case, Plaintiff does not allege ***any*** facts demonstrating that the board lacked the ability to impartially evaluate a claim against Mr. Garfield—the Complaint is silent on this issue. Mr. Garfield resigned as Chief Accounting Officer in August 2017, over a year before

4

Plaintiff filed the Complaint in November 2018. As a result, there can be no plausible inference that Mr. Garfield held any sway over any of the board members, much less that they were dominated by, or beholden to, him. With no facts to support demand futility, the Complaint must be dismissed as to Mr. Garfield.

## C. The Complaint Should be Dismissed under Rule 12(b)(6)

### 1. Legal Standards

Under *Twombly* and *Iqbal,* Plaintiff must allege facts with sufficient detail to state a claim that is "plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff alleging securities fraud must also meet the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (citing 15 U.S.C. §§ 78u-4(b)(1), (b)(2); Fed. R. Civ. R. 9(b)). The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* (*quoting* 15 U.S.C. § 78u-4(b)(1)). The complaint must also allege particular facts creating a "strong inference" that each defendant acted with scienter, that is, a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 314, 319 (2007) (quotations omitted); 15 U.S.C. § 78u-4(b)(2). Here, Plaintiff has failed to allege sufficient facts to establish a material misrepresentation by Mr. Garfield or that he acted with scienter

### 2. The Section 14(a) claim should be dismissed

In Count I, Plaintiff alleges that Mr. Garfield violated Section 14(a) of the Exchange Act in connection with the filing of Symantec's 2017 Proxy Statement on August 16, 2017. Because Mr. Garfield resigned his position on August 7, 2017, before the filing of the 2017 Proxy Statement on August 16, 2017—and the Complaint states no facts to show that Mr. Garfield otherwise had authority over the contents of the statement—the claim must be dismissed as to Mr. Garfield.

In addition, this claim should be dismissed for all of the other reasons set forth in the Independent Directors' Motion to Dismiss, including the failure to plead any materially false statement or omission that caused harm to Symantec. *See* Argument, Section I.A.

### 3. The Section 10(b) and Section 20(a) claims should be dismissed

#### a. Elements of a Section 10(b) claim

"To state a claim for securities fraud under Section 10(b) [15 U.S.C. § 78j(b)], a plaintiff must plead: (1) a material misrepresentation (or omission) in connection with the purchase or sale of a security; (2) scienter, *i.e.,* a wrongful state of mind; (3) reliance; (4) economic loss; and (5) 'loss causation,' *i.e.,* a causal connection between the material misrepresentation and the loss." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 506 (D. Del. 2013). Here, Plaintiff has failed to allege sufficient facts to establish a material misrepresentation by Mr. Garfield or that he acted with scienter.

#### b. Plaintiff fails to plead the challenged statements affected Symantec's repurchase, justifiable reliance, or material falsity

Mr. Garfield joins in the argument by Messrs. Clark and Noviello that Plaintiff fails to adequately plead that he purchased or sold securities "in connection with" the alleged fraud or that he entered the transaction at issue in reliance on the claimed misrepresentations, that is, with the necessary "transaction causation." As set forth by Messrs. Clark and Noviello, Plaintiff fails these

6

requirements because he does not plead a plausible connection between the securities transaction on which his 10(b) claim is based and the alleged fraud; as a result, the Section 10(b) claim should be dismissed. *See* Clark and Noviello's Motion to Dismiss, Section IV.C.3.

In addition, Mr. Garfield joins the in the argument by Messrs. Clark and Noviello that Plaintiff fails to adequately plead justifiable reliance because Plaintiff cannot allege that Symantec justifiably relied on its own purported misstatements. *Id.*

### c. Plaintiff fails to plead facts demonstrating falsity or scienter in connection with statement made by Mr Garfield

*Mr. Garfield can only be liable for statements in the 2017 10-K.* Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.§ 78j(b)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R § 240.10b-5) impose liability on a defendant only for statements that he or she "made" – that is, communications over which he or she exercised "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Typically, "a statement was made by—and only by—the party to whom it is attributed." *Id.* at 142-43. This rule applies both to directors and officers. *See, e.g., Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387, 394-95 (D. Del. 2016) (applying the rule in Janus to defendant officers, including the CEO, COO, and CFO). For an individual defendant to be held accountable, the complaint must allege specific facts that show that defendant had "ultimate authority" over the statement—vague allegations that defendants "collectively prepared" statements are insufficient. *Id.*

Here, the Complaint identifies a single public statement "made" by Mr. Garfield—the 2017 10-K, filed on May 19, 2017, which he signed. ¶ 258. The only other public statement that Plaintiff links to Mr. Garfield in any way is the Q1 2018 10-Q, signed only by Mr. Clark and Mr. Noviello and filed on August 4, 2017. ¶ 418. Absent his signature, the statement cannot be attributed to

7

Mr. Garfield without showing that he had "ultimate authority over the statement." *Janus*, 564 U.S. at 142. But Plaintiff alleges no facts to show such authority. Instead, Plaintiff alleges that Mr. Garfield attended an audit committee meeting on August 4, 2017—with the entire audit committee as well as his bosses, Mr. Clark and Mr. Noviello. Plaintiff then makes the conclusory allegation that *as a group* these individuals "approved" the Q1 2018 10-Q. This allegation is wholly insufficient to demonstrate that Mr. Garfield exercised the necessary authority over the statements to incur personal liability under the securities laws. *See Universal Am. Corp.* v. *Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 394 (D. Del. 2016) (dismissing claim against executive where complaint "lump[ed] [him] together with [other defendants], making only vague allegations about his participation").

**Plaintiff fails to plead falsity.** As to the 2017 10-K, Plaintiff's vague allegations do not meet the pleading standards Rule 9(b) and the PSLRA. Plaintiff's allegations of falsity fail to "specify each allegedly misleading statement and the reasons why the statement is misleading." *Instit. Invs. Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). The Complaint quotes extensively from the 2017 10-K. *See* ¶¶ 258-266. Later, Plaintiff makes broad and generalized claims that these statements were false and failed to disclose material facts about the supposed mismanagement of the company. ¶ 341. But Complaint never identifies with specificity *which* of the many statements it quotes from the 10-K are false. Nor does the Complaint plead facts that demonstrate *why* the statements are false or *what* about the falsity of the statements could have been material to potential investors. Nor does it identify *how* Mr. Garfield would have known that the statements were false at the time they were made or other allegations indicating *how* he acted with the intent to deceive manipulate or defraud. *See California Pub. Employees' Ret. Sys.*, 394 F.3d at 144 (3d Cir. 2004) ("plaintiffs asserting securities fraud claims must specify the who, what,

when, where, and how: the first paragraph of any newspaper story" (internal quotation and citation omitted)).  Plaintiff's lengthy recitation of emails, board minutes, and committee meeting discussions does nothing to demonstrate why any of the statements in the 2017 10-K were materially false when made.  Further, "allegations of failure to disclose mismanagement alone do not state a claim under federal securities law" because they are immaterial as a matter of law. *Craftmatic Sec. Litig.* v. *Kraftsow*, 890 F.2d 628, 639 (3d Cir. 1989).

For example, the Complaint quotes the entirety of Item 9A, the disclosures surrounding the Company's controls and procedures.  ¶ 259.  The Complaint later sets forth the conclusory assertion that the defendants "failed to maintain internal controls"—but at no point provides any facts demonstrating how or why that is the case. *See* ¶ 341.  Indeed, though the Audit Committee investigation later recommended enhanced internal controls over certain transition and tracking expenses, the Audit Committee *did not* conclude that controls were lacking or materially weak or ineffective, and it is undisputed that Symantec's auditors concurred with management that the internal controls were effective with no material weaknesses.  ¶¶ 374-75.  Further, the Complaint does not allege that the failure of any specific controls led to a material misstatement of any financial metric.  Indeed, Symantec never restated its 2017 financials. *Id.*  As a result, Plaintiff has not alleged an actionable false or misleading statement in the 2017 10-K. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 711 (3d Cir. 1996) (affirming dismissal of claim based on statements about adequacy of internal controls when internal auditors identified concerns and recommended improvements).

*Plaintiff fails to plead scienter.*  The only allegation addressing scienter is the conclusory assertion that because of the Individual Defendants' positions as "top executives," they were all "directly responsible for the schemes." ¶ 540.  Such a general statement fails to meet the PSLRA's

9

requirement that a claim under Section 10(b) state with particularity facts giving rise to a ***strong inference*** that Mr. Garfield acted with scienter, or in other words, the intent to deceive, manipulate, or defraud.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 321 (2007). Moreover, "plaintiffs may not make general allegations of scienter against a collective group of defendants; they must 'specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions.'" *City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 420-21 (D. Del. 2009) (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007).

At various points, Plaintiff quotes Mr. Garfield's deposition testimony from the related securities class action case in the Northern District of California, *SEB Inv. Mgmt. AB v. Symantec Corp., et al.,* 3:18-cv-02902-WHA, as well as a document produced in that litigation that purports to be notes from an exit interview conducted by Audit Committee member Anita Sands.  ¶¶ 176, 209-210.  But none of these statements raise an inference that Mr. Garfield made an intentional misrepresentation in the 2017 10-K—or that any of the other Individual Defendants made any intentional misrepresentations in any public statement.  Rather, they reflect that the accounting department overseen by Mr. Garfield was doing its job in identifying errors and addressing them with management and the board.  *See, e.g.*, ¶¶ 200-201 (Garfield raised issues and made suggestions to the Audit Committee); ¶ 203 (email suggesting various changes after errors identified); ¶ 219 (Mr. Garfield identified issues and raised them to Mr. Noviello and Mr. Clark). In addition, Plaintiff quotes Mr. Garfield's answer to a ***hypothetical*** deposition question, ¶ 176 (deposition testimony in which Mr. Garfield answers a hypothetical), and a purported statement from his exit interview about ***issues that could arise in the future***.  ¶¶ 209-210 (Mr. Garfield identifying potential future issues at his exit interview).

10

Even so, Plaintiff's quotes are selective and leave out critical parts of Mr. Garfield's testimony that defeat any possible inference that Mr. Garfield acted with the intent to deceive, manipulate, or defraud. Indeed, Mr. Garfield testified that "we never reported amounts incorrectly . . . nothing went out that was materially wrong." He also clarified that Mr. Clark "did not ever indicate that he wanted to do something illegal from a financial reporting standpoint." Further, in July of 2017, Mr. Garfield voluntarily offered to resign so that Symantec would not need to cut staff. And Mr. Garfield explained that at the time of his exit interview "there were enough controls to provide materially accurate financial information . . . What I expressed to Anita was my concern that when [the controller and I] left, that potentially the company could, you know, be in a situation where there's not enough controls over non-GAAP." *SEB Inv. Mgmt. AB v. Symantec Corp., et al.*, 3:18-cv-02902-WHA, Dkt. No. 293 at 141:8-18; 144:22-24; 147:18-20;160:24-161:4. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'")

None of Plaintiffs' allegations raise the strong inference that Mr. Garfield or others at Symantec made a material misstatement with the intent to deceive, manipulate, or defraud in connection with the 2017 10-K. As a result, Plaintiff fails to state a 10(b) claim against Mr. Garfield.

Mr. Garfield also joins and adopts the arguments in Clark and Noviello's Motion to Dismiss demonstrating that Plaintiff's vague and general allegations do not adequately plead material misrepresentation or scienter. *See* Section III.C.3.

Without a viable underlying claim under 14(a) or 10(b), there can be no secondary liability

under Section 20(a). *See In re Resolute Energy Corp. Sec. Litig.*, 2021 WL 327385, at *5 (D. Del. Feb. 1, 2021), *aff'd*, 2022 WL 260059 (3d Cir. Jan. 27, 2022). That claim also fails because the Complaint alleges no concrete facts demonstrating that Mr. Garfield exercised control over a primary violator. *See Duncan v. Vantage Corp.,* 2019 WL 1349497, at *5 (D. Del. Mar. 26, 2019) (to establish control person liability, a plaintiff must allege facts demonstrating actual control over other defendants, not merely title or corporate relationships).

### D. The breach of fiduciary duty claim fails

Mr. Garfield joins in the arguments set forth in Messrs. Clark and Noviello's Motion to Dismiss at Section III.C.6, and that of the Independent Directors' Motion to Dismiss at Argument, I.D, regarding the insufficiency of the Delaware breach of fiduciary claim. More specifically as to Mr. Garfield, the Plaintiff here asserts a breach of fiduciary duty claim under two theories—both of which require facts that demonstrate specific knowing and willful conduct by Mr. Garfield, and which are absent in the generalized hodgepodge of allegations in the Complaint. First, Plaintiff attempts to allege a *Caremark* claim for failure of oversight based on the alleged failure to maintain "disclosure controls and procedures." ¶¶ 286, 551. This claim requires facts demonstrating a knowing failure of oversight so egregious and persistent as to constitute bad faith. *See Desimone* v. *Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007). Further, Plaintiff must plead facts that establish that Mr. Garfield: 1) knew that the existing internal controls and procedures were inadequate; 2) knew that these inadequacies could lead to illegal or materially harmful behavior; and 3) that he, personally, chose to do nothing about the procedural and control deficiencies that he knew existed. *Id.* at 940. The Complaint here alleges no "red flags" or other specific facts that could establish that Mr. Garfield knew of control deficiencies and, with bad faith, chose not to act. As a result, this claim fails.

Second, Plaintiff attempts to allege a claim for breach of fiduciary duty based on the

purported false and misleading public statements made by the defendants (¶ 551)—which, for Mr. Garfield, is limited to the 2017 10-K.  To state this claim, Plaintiff must plead facts that establish that Mr. Garfield knowingly disseminated materially false information to deliberately misinform shareholders or otherwise acted in bad faith.  *See In re Citigroup Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 132, 133-34 (Del. 2009).  To establish this violation, the Plaintiff must plead with specificity what the defendant knew and when.  *Id.* at 134.  And Rule 9(b)'s particularity requirements also apply to the allegations.  *See Claude Worthington Benedum Found. v. Bank of New York Mellon Corp.*, 422 F. Supp. 3d 940, 945 (W.D. Pa. 2019), *aff'd*, 849 F. App'x 36 (3d Cir. 2021) (dismissing breach of fiduciary duty based on materially false statements under Rule 9(b)).  As set forth above in the 10(b) analysis, the generalized allegations in the Complaint do not allege specific facts as to what statements in the 2017 10-K are materially false or misleading, why these statements are false, or how Mr. Garfield would have known that these facts were misleading.  Indeed, as referenced, Symantec never restated or corrected any of the GAAP or non-GAAP metrics in the 2017 10-K, ¶¶ 374-75.  And after undertaking its own investigation into accounting practices, the SEC took no-action against the company or any of its employees.  *See* https://www.prnewswire.com/news-releases/nortonlifelock-announces-conclusion-of-sec-investigation-301536623.html; *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 274 (D.N.J. 2007) (taking judicial notice of SEC no-action letter to acknowledge close of investigation).  Again, this claim fails.

### E. The unjust enrichment claim fails

Mr. Garfield joins in the arguments of Messrs. Clark and Noviello in their Motion to Dismiss at Section III.C.8. on the inadequacy of the unjust enrichment claim.

More specifically as to Mr. Garfield, the unjust enrichment claim is entirely duplicative of the breach of fiduciary duty claim because the Plaintiff alleges no enrichment apart from Mr.

Garfield's regular salary, benefits, and unspecified bonuses. Because Plaintiff alleges no other enrichment, this claim must fail: "a claim for unjust enrichment cannot be maintained where, as here, the 'only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses.'" *Steinberg* v. *Dimon*, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014); *see also Behrmann v. Brandt*, 2020 WL 4432536, at *17 (dismissing unjust enrichment claim and citing cases). As a consequence, the unjust enrichment claim necessarily fails because "duplicative fiduciary duty and unjust enrichment claims [are treated] in the same manner" on a motion to dismiss. *Frank* v. *Elgamal*, 2014 WL 957550, at *31–32 (Del. Ch. Mar. 10, 2014).

### F. The waste claim fails

Finally, Mr. Garfield joins in the arguments on corporate waste in the brief filed by Messrs. Clark and Noviello in their Motion to Dismiss at Section III.C.8. As they set out, "Corporate waste is confined to unconscionable cases where directors irrationally squander or give away corporate assets." *Taylor v. Kissner*, 893 F. Supp. 2d 659, 673 (D. Del. 2012) (internal quotation and citation omitted). Specifically, as to Mr. Garfield, the Complaint is devoid of any facts demonstrating that he was involved in the decision making on any of the corporate expenditures at issue. Plaintiff alleges waste based on Symantec paying: (i) excessive incentive payments to Messrs. Clark and Noviello (¶ 567), (ii) legal fees and potential loss of financing and customers because they no longer trust the company (¶ 568), and (iii) inflated prices for the stock repurchase (¶ 569). Even if these expenditures could support a claim for waste, the Complaint contains no facts indicating that Mr. Garfield was involved in any of these issues.

### IV. CONCLUSION

For the foregoing reasons, Mr. Garfield respectfully requests that the Complaint be dismissed.

| | |
|---|---|
| Dated: August 25, 2022 | **LANDIS RATH & COBB LLP** |
| | |
| | */s/ Rebecca L. Butcher* |
| *Of Counsel:* | Rebecca L. Butcher (No. 3816) |
| Miles Ehrlich | Jennifer L. Cree (No. 5919) |
| Katharine Kates | Howard W. Robertson IV (No. 6903) |
| RAMSEY & EHRLICH LLP | 919 Market Street, Suite 1800 |
| 803 Hearst Avenue | Wilmington, DE  19801 |
| Berkeley, California 94710 | Telephone: (302) 467-4400 |
| (510) 548-3600 | Facsimile: (302) 467-4450 |
| | butcher@lrclaw.com |
| | cree@lrclaw.com |
| | robertson@lrclaw.com |
| | |
| | *Attorneys for Defendant Mark S. Garfield* |

15